IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIA DEL CARMEN MENDEZ

    Plaintiff

    v.                                    CIVIL NO. 98-1437 (JAG)

TOGO WEST, ACTING SECRETARY
OF VETERANS AFFAIRS

    Defendant

---

## OPINION AND ORDER

    Plaintiff María Del Carmen Méndez ("Méndez") brought suit against defendant Togo West, Acting Secretary of the Department of Veterans Affairs, pursuant to the Rehabilitation Act ("Act"), 29 U.S.C. 701 <u>et seq.</u> . Méndez alleges that the Department of Veterans Affairs ("DVA") discriminated against her because of a mental disability by suspending her from work at the Veterans Hospital Outpatient Clinic in Ponce for 14 days, and by transferring her to the Veterans Medical Center in San Juan. A DVA arbitrator reviewed the decision and reduced the suspension to seven days. The EEOC affirmed the decision on appeal. Both, the arbitrator and the EEOC, found that Méndez had not established a prima facie claim of discrimination under the Act. Méndez appealed the EEOC decision to this Court pursuant to 29 CFR 1614.401(a). Defendant has moved for summary judgment(Docket No.





AO 72A
(Rev.8/82)



38), contending that Méndez failed to meet her burden of establishing a prima facie case of disability discrimination. Upon review of the record, the Court grants the motion.

## FACTUAL BACKGROUND

Méndez has been employed by the DVA, a federally funded agency, at its outpatient clinic in Ponce, Puerto Rico since 1989, when she began as a Psychiatric Clinical Nurse Specialist. In 1991, the DVA gave Méndez the option of transferring to a Medical Center in San Juan to continue work as a specialist, or of remaining in Ponce. She opted to remain in Ponce as a staff nurse. There was no change in her salary, but she was placed under more direct supervision as a staff nurse, which resulted in some degree of friction between her and her new supervisor, Belén Rivera ("Rivera"). (Docket No. 38, Defendant's Statement of Uncontested Material Facts, Exhibit 14 at 2).

On May 3, 1995, Rivera held a private meeting with Méndez to discuss Méndez's failure to revise the medication list for the Clinic's treatment room during the previous day. (Docket No. 44, Plaintiffs Statement of Uncontested Material Facts, Exhibit 14, at 2). What transpired during this meeting is in dispute. (Id.) Following this meeting, Méndez told a coworker that she wanted to slap Rivera and that she was capable of buying a gun and shooting Rivera. (Id.) Shortly thereafter, Méndez went to the office of the Clinic Director and spoke with his secretary, to whom she



2

confessed that she wanted to hit Rivera. She then met with the Assistant Director, to whom she repeatedly expressed her desire to assault Rivera. (Id.) The Assistant Director gave Méndez a day off and referred her to the agency's physician and the Employee Assistance Program. (Id.)

Following this incident, the DVA Board of Investigation looked into the matter and issued a report on July 20, 1995, concluding, "that there are serious and impaired working relations between [Méndez] and [Rivera]. With the potentially explosive working relationships established by [Méndez] ... we consider that the situation carries the potential of a fatal outcome." (Docket No. 38, Defendant's Statement of Uncontested Material Facts at 2). The Board of Investigation report further recommended that the situation be considered by higher level management due to the potential risk of a fatal incident; that appropriate measures be adopted immediately; and that the Service Chief consider disciplinary action including the removal of Méndez from the DVA. (Id.) On August 10, 1995, the Chief of Nursing Service notified Méndez that she would be transferred to the DVA medical center in San Juan, and that she should report to the Risk Management Unit there. (Id.) On October 10, 1995, the DVA issued Méndez a 14-day suspension.

Méndez requested an arbitration through the local grievance procedure, alleging that she was discriminated against on the



3

basis of a mental disability. At the arbitration hearing the parties stated that Méndez had only suffered from two anxiety attacks of a temporary nature. (Docket No. 38, Defendant's Statement of Uncontested Material Facts at 3). The first anxiety attack was in 1993, for which she visited a psychiatrist who prescribed her medication. (Docket No. 44, Plaintiffs Statement of Uncontested Material Facts, Exhibit 1, p. 6). The second anxiety attack was her verbal outburst in 1995. After the outburst, Méndez visited another psychiatrist who diagnosed her as having depression. (Id.) She visited the latter for several weeks, and was prescribed medication. She stopped taking medication in 1995, and has been seeing a therapist once a month since. (Id.) The parties further stated that Méndez worked well at the San Juan facility since the incident and that she was never hospitalized for emotional or mental illness. (Id.)

After considering the evidence, the arbitrator found that Méndez was not discriminated against on the basis of a disability, and after considering several mitigating factors reduced her disciplinary suspension to seven days. (Docket No. 38, Defendant's Statement of Uncontested Material Facts, Exhibit 12 at 13). The arbitrator considered Méndez's excellent academic record, her good work record, and the fact that she had no prior disciplinary problems. (Id.) The arbitrator emphasized, however, that "since I find that [Méndez's] conduct was of a more serious

nature, causing disruption and tension in her workplace, I am hereby reducing same to a 7 day suspension." (Id. at 14). Méndez appealed the arbitrator's decision to the EEOC. The EEOC affirmed, holding "that [Méndez] has failed to meet her burden of establishing a prima facie case of disability discrimination." (Id.)

## DISCUSSION

### I. The Summary Judgment Standard

In the context of summary judgment, the plaintiff must show that there is a genuine issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson, 477 U.S. at 248. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." See Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F. 2d 5, 8 (1st Cir. 1990). The issue before the court is "not



5

whether [it] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." See Anderson, 477 U.S. at 252. See also Lipsett, 864 F.2d at 895 (1st Cir. 1988).

## II. Discrimination under the Rehabilitation Act

Under the Act, the claimant bears the initial burden of proving each element of his or her claim for disability discrimination. See Cook v. State of Rhode Island, 10 F.3d 17, 22 (1st Cir.1993). If proven, the burden shifts to the defendant to produce evidence showing that his or her actions were based on nondiscriminatory reasons. See McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). At all times the ultimate burden of persuasion rests on the plaintiff to show that the sole reason for defendant's adverse employment decision was discrimination. Id. Under McDonnell Douglas, Méndez bears the initial burden of establishing a prima facie case of disability discrimination. See McDonnell Douglas, 411 U.S. at 802. The specifications of the prima facie proof vary depending on the nature of the discrimination claim. See Id. at 802 n. 13. In general, an employee alleging disability discrimination must first establish a prima facie case by showing that the party was: (1) a handicapped person within the meaning of the Act; (2) an otherwise qualified handicapped person; and (3) excluded or terminated from the position she sought solely by reason of her handicap. See 29



U.S.C. § 794(a). <u>See also</u> <u>Katz v. City Metal Co. Inc.</u>, 87 F.3d 26, 30 (1st Cir. 1996).

### III. <u>The Prima Facie Case</u>

#### A. "Handicapped" Under The Rehabilitation Act

The first step in the analysis is to determine whether Méndez is disabled pursuant to the Act. An individual is considered handicapped under the Act if that individual (1) has a physical or mental impairment that substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. <u>See</u> 29 U.S.C. §794(a), referring to 42 U.S.C. § 12101 <u>et seq.</u>; 29 CFR § 1614.203. "Physical or mental impairment" includes disorders and conditions "whose precise nature [are] not at present known." <u>Id</u>. Whether an individual's alleged disability substantially limits one or more of her major life activities is evaluated on a case by case basis. <u>See</u> 29 U.S.C. § 706(2).

"Major life activities, have been defined as, functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." <u>See</u> 29 C.F.R. § 1630.2(i); <u>see also</u> <u>Katz</u> 87 F.3d at 31. To be substantially limited in performing these activities, an individual may be "unable to perform a major life activity that the average person in the general population can perform," or be

7

"significantly restricted" in her performance of that activity. See 29 C.F.R. § 1630.2(j)(1).

Mental illness is a disability under the Act only under certain circumstances. For instance, in <u>Boldini v. Postmaster General U.S. Postal Service</u>, 928 F.Supp. 125 (D.N.H. 1995), the Court found plaintiff to be handicapped because a physician diagnosed him with major depression and a personality disorder, and prescribed him an antidepressant. <u>Boldini</u>, 928 F.Supp at 130. Temporary conditions, however, generally do not render someone "handicapped" under the Act. See <u>Presutti v. Felton Brush, Inc.</u>, 927 F.Supp. 545, 550 (D.N.H. 1995); <u>see also</u> <u>Grimard v. Carlston</u>, 567 F.2d 1171, 1174 (1st Cir. 1978).



The record shows that Méndez experienced two anxiety attacks for which she was treated temporarily, one episode in 1993, and one in 1995. Given the temporary nature of these episodes, a plain reading of the statute cannot support a finding that Méndez has a physical or mental impairment that substantially limits one or more of her major life activities, because she returned to a stable mental condition after a relatively short period of time. See <u>Presutti</u>, 927 F.Supp at 550; <u>Grimard v. Carlston</u>, 567 F.2d 1171, 1174 (1st Cir.1978). An essential aspect of a claim under the Act requires that a plaintiffs' "disability" or "handicap" be permanent in nature, which Méndez has not demonstrated on evidence

proffered. See Criado v. IBM Corp., 145 F.3d 437, 442 (1st Cir. 1998).

Méndez asserts that she was "handicapped" under the Act because her supervisor regarded her as being handicapped. See 29 U.S.C. §794(a). To survive summary judgment, Méndez must prove that the DVA perceived her as having a "physical or mental impairment" that substantially limited one or more of her major life activities. See Cook v. State of R.I. Dept of MHRH, 10 F.3d 17, 22 (1st Cir. 1993); Katz, 87 F.3d at 33. During the DVA arbitration hearing, Rivera's testimony, raised the question whether the DVA perceived Méndez to be disabled. At the hearing Rivera described Méndez as, "a person that [was] constantly crying to me at work, with frequent mood swings . . . who couldn't make effective decisions when giving direct care to patients, and I am very afraid because a person in this emotional state can commit errors." (Docket No. 44, Memorandum in Opposition to Motion for Summary Judgment, p. 12).

Working is a major life activity under the Act. See Cook, 10 F.3d at 25. Nevertheless, this Circuit distinguishes an inability to perform "a class of jobs," which provides the basis for a disability finding, from an "inability to perform a single, particular job" which does not render someone disabled. See 29 C.F.R. § 1630.2(j)(3)(i); Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999). For instance, someone merely inept

9

at a certain skill or a specific job is not "substantially limited in one of life's major activities," and thus is not "handicapped," but someone limited in a wide range of job functions may be considered "handicapped" under the Act. See Cook, 10 F.3d at 25, 26. Rivera's testimony does not clarify for the Court whether she perceived Méndez to be substantially limited in performing a wide range of jobs, or in performing a specific function, and therefore, resolving this issue is the jury's province. See Cook, 10 F.3d at 26. Thus, we proceed to assess the remaining elements of Méndez's prima facie case.

**B. Otherwise Qualified**

To clear the next hurdle in defeating summary judgment, Méndez must demonstrate that she was "otherwise qualified" to remain at her position in Ponce. An "otherwise qualified" individual is "a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of an individual or others." See School Bd. of Nassau Co. v. Arline, 480 U.S. 273, 287-288, n. 17 (1987).

One who exhibits violent behavior that threatens the health or safety of others is not "otherwise qualified." See Mazzarella v. U.S. Postal Service, 849 F.Supp. 89, 94 (1994); Boldini, 928 F.Supp. at 131. Furthermore, when an individual threatens her employer, she may not maintain a cause of action under the under

10

the Americans with Disabilities Act ("ADA"), and consequently under the Act.[1]  See <u>Palmer v. Circuit Court of Cook County</u>, 117 F.3d 351, 352 (7th Cir. 1997).  Whether or not the threat was precipitated by a mental disability is immaterial.  See <u>Palmer</u>, 117 F. 3d at 352.  The Act only protects qualified employees, and violent behavior sheds that protection.  <u>Id</u>.

Méndez contends that her excellent academic achievements, her commendable work record,[2] and her continued performance of the essential functions of her employment at the DVA medical center in San Juan renders her "otherwise qualified."  Defendant ripostes that Méndez's violent outbursts in 1995 overshadows her academic credentials and work record.  It is undisputed that Méndez told several individuals that she wanted to hit, slap, and even buy a gun and shoot Rivera following their meeting in 1995.  These indirect verbal threats, however, were witnessed on one isolated occasion.  Méndez has proffered enough evidence for a reasonable jury to conclude that she is an otherwise sound employee.  See

---

[1]  29 U.S.C § 794(1)("Rehabilitation Act is materially identical to and is the model for ADA."); <u>see also</u>, <u>EEOC v. Amego</u>, 110 F.3d 135, 143 (1st Cir. 1997).

[2]  Méndez has a B.A. in Nursing, a Master's degree in Health and Psychiatric Nursing, a Master's degree in Professional and Clinic Psychology, and a Ph.D. in Clinical Hypotherapy.  She also served as an army nurse for several years.  Moreover, the DVA arbitrator considered her good work record as a mitigating factor in reducing her suspension from fourteen days to seven. (Docket No. 44, Plaintiffs Statement of Uncontested Material Facts, Exhibit 1, p. 6).

Boldini, 928 F.Supp. at 131. If Méndez had been physically violent, or directly threatened Rivera, then she would unquestionably be disqualified from pursuing retribution under the Act. See Mazzarrella, 849 F.Supp. at 94; Palmer, 117 F. 3d at 352. Thus, these facts are not conclusive that Méndez was not "otherwise qualified" as a matter of law.

Even if Rivera perceived Méndez to be handicapped, and Méndez proved herself otherwise qualified, defendant will be entitled to summary judgment if Méndez does not proffer sufficient evidence to convince a jury that the DVA suspended and transferred her solely because of her alleged perceived handicap. To defeat summary judgment, Méndez must raise an inference of discriminatory motive in order to create a dispute of material fact. Thus, Méndez must proffer enough evidence from which a reasonable inference of discrimination can be drawn. See Mazzarella, at 96 (quoting Villanueva v. Wellesley College, 930 F.2d 124, 128 (1st Cir. 1991).

After carefully reviewing the record and the findings made by the DVA Board of Investigation, the DVA arbitrator, and the EEOC, the Court finds that there is no evidence from which a fact-finder could reasonably infer a discriminatory motive. See Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978); Villanueva, 930 F.2d at 128. Rather, the Court finds from the undisputed facts

that the DVA acted in a non-discriminatory manner to avoid a potentially dangerous situation.

Although Méndez contends that Rivera's statement shows that she was perceived as being handicapped, and that she was arguably qualified for the position in Ponce, it is clear from the evidence presented by both parties that Méndez was suspended and transferred for disciplinary reasons, and not because she was perceived to be disabled.

Furthermore, the findings of the DVA arbitrator and the EEOC demonstrate that the DVA justifiably transferred Méndez for disciplinary reasons and to resolve the heated conflict between Méndez and Rivera. The DVA, in deciding to suspend Méndez and transfer her, considered the recommendation of the Board of Investigation that Méndez be terminated due to "the potential risk of a fatal accident" because "there are serious and impaired working relations between [Méndez] and [Rivera]." (Docket No. 38, Statement of Uncontested Facts, Exhibits 12, 13). Méndez has not rebutted this evidence. Thus, Méndez has not presented any evidence that could possibly sustain an inference that she was punished solely by reason of a perceived handicap. See Boldini, 928 F.Supp. at 133. Under those set of facts, Méndez cannot prevail on her claims. The Complaint must be dismissed.

13

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's motion for summary judgment(Docket No. 38). Judgment will be entered dismissing the Complaint with prejudice.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 30th day of November, 2001.

															JAY A. GARCIA-GREGORY
															U.S. District Judge